RECEIVED-CLERK
U.S. DISTRICT COURT

**NOT FOR PUBLICATION**

2005 SEP 12 A 10: 51

|  |  |
|---|---|
| D. MICHAEL JEWITT,<br><br>  Plaintiff(s),<br><br>  -vs-<br><br>IDT CORPORATION, et al.,<br><br>  Defendant(s). | UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY<br><br>Hon. John C. Lifland<br>Civil Action No. 04-1454 (JCL)<br><br>**MEMORANDUM** |

Mark Falk, U.S.M.J.

## INTRODUCTION

Defendants IDT Corporation, Howard S. Jonas, Motti Lichtenstein, Jack Lerer, David Schropfer, Avi Lazar, Robert Schiff, Michael Levine, Jonathan Levy, Alex Schwartz, James A. Courter, Joyce Mason, and John Cale (hereinafter "Defendants") move to seal portions of the complaint filed by Plaintiff D. Michael Jewitt. For the reasons stated below and on the record on July 12, 2004, the motion is **granted** in part and **denied** in part.

## BACKGROUND

On November 12, 2003, Plaintiff was terminated from his position at IDT after seven months of employment. For the first three months, Plaintiff worked on a probationary basis as a Regional Director for the Caribbean. On July 15, 2003, Plaintiff became Associate Regional Vice President for the Caribbean. During the Plaintiff's employment he signed an acknowledgment of receiving an IDT employee handbook. That handbook requires IDT employees to protect the confidentiality of IDT's records and prohibits outside discussion about IDT except for business purposes. In addition, Plaintiff signed a confidentiality agreement that forbids former employees from discussing

information gained through employment with IDT for a period of one year after departure.

In September 2003, Plaintiff was assigned to act as a "commercial facilitator" between IDT and the Caribbean telecommunication company Teleco Haiti to negotiate a business relationship permitting IDT to terminate calls in Haiti. During those negotiations, Plaintiff claims he began to voice concerns about the propriety of the proposed agreement. Specifically, Plaintiff alleges that IDT entered into a conspiracy to offer and make illegal payments, essentially "kickbacks," to former Haitian president Jean-Bertrand Aristide in return for the telephone business. Plaintiff claims that he was terminated in retaliation for his complaints about the Haiti deal. He also alleges a hostile work environment based on religion. Defendants respond that Plaintiff's claims are without merit and that the Plaintiff was terminated for performance reasons.

Plaintiff's complaint alleges claims pursuant to the New Jersey Anti-Racketeering Statute, N.J.S.A. 2C: 41-1 et seq.; the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34: 19-1 et seq.; the New Jersey Law Against Discrimination, N.J.S.A. 10: 5-1 et seq. and various common-law causes of action.

On March 10, 2004, Plaintiff's counsel forwarded a copy of the subsequently filed complaint to Defendant's counsel. Counsel for both sides then began what quickly became a bitter exchange of phone calls and letters regarding the wording of the complaint. Specifically, Defendants asserted that the complaint improperly disclosed trade secrets and violated confidentiality obligations by disclosing proprietary business information. Defendants also claimed the complaint disclosed communications protected by attorney-client privilege. Defendants requested that the complaint be filed under seal, or that Plaintiff voluntarily remove the confidential information. After the complaint was filed, both side's counsel participated in a telephone conference with the undersigned,

2

in which they were encouraged to continue to attempt to resolve the issue among themselves. Apparently, a few changes were agreed upon.

On May 3, 2003, Defendants filed this motion to seal portions of the complaint filed on March 29, 2003. Plaintiff then filed an amended complaint on May 14, 2004, removing certain specific price information on the rate for terminating traffic in Haiti but making no other changes. This motion was extensively briefed and oral argument was heard on July 12, 2004.

Specifically, Defendants request that the following items be sealed:

1. The name of the customer with whom IDT negotiated the business agreement (found in Paragraphs 31-32, 35-37, 39-42, 44-49, 51-58, 60-62, 70, 105-107, 119, and 123 of the Complaint).

2. The dollar amounts of the deposit, per minute rate for terminating traffic in Haiti, per minute settlement rate, per minute agent's fee, and cost savings to IDT (found in Paragraphs 38, 42, 59, and 61 of the Complaint).

3. Legal advice given by IDT's in-house counsel, Alex Schwartz, during the negotiation of the agreement (found in Paragraphs 54-55 and 58 of the Complaint).

4. The specific terms and negotiations of the agreement (found in Paragraphs 36 and 59 of the Complaint).

5. The identities of specific contact individuals at specific companies, including their personal e-mail addresses (found in paragraph 52 of the Complaint).

6. The identities of particular individuals with authority to enter into contractual relationships on behalf of their companies (found in Paragraphs 60 and 62 of the Complaint).

## DISCUSSION

There is both a common law and First Amendment public right of access to judicial proceedings and records. See Littlejohn v. BIC Corporation, 851 F.2d 673, 677-78 (3d Cir. 1988); Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984). Even though there is a strong presumption of openness to the public "the right is not absolute." Littlejohn, 851 F.2d at 678;

3

Leucadia, Inc. v. Applied Extrusion Tech., Inc., 998 F.2d 157, 165 (3d Cir. 1993). Openness is clearly favored in the Third Circuit unless good cause is shown to the contrary. See Glenmede Trust Co. v. Thompson, 56 F.3d 476, 484-85 (3d Cir. 1995). A party moving to seal any part of a judicial record, in other words, to override the common law public right of access, faces a heavy burden in showing good cause. The movant must demonstrate that "'the material is the kind of information that courts will protect' and that 'disclosure will work a clearly defined and serious injury to the party seeking closure." Miller v. Indiana Hospital, 16 F.3d 549, 551 (3d Cir. 1994)(quoting Publicker, 733 F.2d at 1071). The injury claimed by the party seeking closure must be stated with specificity; "broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient." In re Cendant Corp., 260 F.3d 183, 194 (3d Cir. 2001); see also Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994). Allegations of corporate misconduct are not considered the type of information that courts protect. See Publicker, 733 F.2d at 1074; Allied Corporation v. Jim Walter Corporation, Nos. 86-3086, 95-5530, 1996 WL 346980, at *3 (E.D.Pa. June 17, 1996). The kind of information courts do protect, especially in civil litigation, is often trade secrets. See Publicker, 733 F.2d at 1073. See Republic of the Philippines v. Westinghouse Electric Corp., 139 F.R.D. 50, 61 (D.N.J. 1991) (citing Nixon v. Warner, 435 U.S. 589, 598 (1978)), see also Littlejohn, 851 F.2d at 685 (rejecting notion that confidential business information is entitled to same level of protection as trade secrets).

In order for this Court to grant the motion to seal the complaint, the Court must find a compelling countervailing interest to be protected. See Miller, 16 F.3d at 551; Cendant, 260 F.3d at 194. More specifically, before taking the extraordinary step of sealing any part of the judicial record, the court must "have articulated the compelling countervailing interests to be protected, made

4

specific findings on the record concerning the effects of disclosure and provided an opportunity for interested third parties to be heard." Id. Each item requested to be sealed will now be analyzed using the above standards.

1. **Name of Customer**

Defendants claim that the name of Teleco Haiti and the fact that IDT and Teleco Haiti have a relationship should be sealed, because they consider this business relationship to be proprietary. Defendants also claim that IDT's advertisement of Haiti as a calling destination does not constitute a waiver of IDT's proprietary information concerning its agreement. Teleco Haiti is a state-controlled monopoly. There is no other company in Haiti to deal with to have calls terminated there. IDT's claim that the identity of Teleco Haiti, or the fact that IDT has some contracts with it, should be kept secret simply because IDT "does not publicize" such a relationship is unavailing. Perhaps IDT would prefer people not to know that it conducts business with Teleco Haiti, but it does not require being, or having been, an employee of IDT to know that such a relationship exists. At argument and in his papers, Plaintiff has established that the IDT/Teleco Haiti relationship is publicly available information. For example, this information may be gleaned from public sources, including FCC filings. It also appears that the subject was addressed on two internet sites before the complaint was filed. Although IDT may consider it proprietary, this is not the sort of information that justifies stripping the public of its right to access.

2. **Dollar Amounts**

At oral argument, the parties agreed that some of the precise dollar amounts listed in the complaint should not be available to the public. Plaintiff has already filed an amended complaint on May 14, 2004 that removed the dollar amount of the per minute rate. Nonetheless, the

5

information is available to the public via the filed original complaint. Having specific pricing information publicly available presents an identifiable, specific harm to IDT. This sort of detailed information could enable competitors to undercut IDT. Defendant has also established that the exact per minute rate savings negotiated is sensitive information that IDT has diligently kept confidential. Once again, this information could allow competitors to offer services at prices below those charged by IDT. The pricing numbers and profit margins referred to in the complaint are classic trade secrets that courts routinely protect. There is also no need for this information to be published in the complaint even under the heightened pleading requirements applicable to fraud claims set forth in F.R.C.P. 9. Preventing harm by limiting access to trade secrets is a compelling countervailing reason to allow sealing. Therefore, the specific dollar amounts listed in paragraphs 38, 42, 59 and 61 of the original complaint as well as paragraphs 38 and 61 of the amended complaint should be sealed.

### 3. Attorney-Client Privilege

It is generally recognized that there are important public and private purposes for maintaining the confidentiality of communications subject to the attorney-client privilege. "[I]ndeed, this is precisely the kind of countervailing concern that is capable of overriding the general preference for public access to judicial records." Siedle v. Putnam Invs., 147 F.3d 7 (1st Cir. 1998) (reversing district court's decision to unseal privileged documents at the request of a newspaper); see also Crystal Grower's Corp. v. Dobbins, 616 F.2d 458, 462 (10th Cir. 1980) (stating that the public's interest in preserving the attorney-client privilege outweighs the public's more general interest in access to court documents); The Diversified Group, Inc. v. Daugerdas, 217 F.R.D. 152 (S.D.N.Y. 2003) (ordering the appointment of a special master to examine record and redact attorney-client privileged communications). That confidentiality would be undermined if one party could

"unilaterally trumpet such information in a pleading for public inspection." Dombrowski v. Bell Atlantic Corporation, 128 F. Supp.2d 216, 218 (E.D.Pa. 2000). In Dombrowski, the Court also was asked to seal privileged information in a complaint and determined that the court is not bound by the parties' evaluation, "but must review the information in question and balance the competing rights of public access against the parties' privacy interests." Id.

The traditional elements of the attorney-client privilege are: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court; (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. Rhone-Poulenc Rorer, Inc. v. Home Indem. Co., 32 F.3d 851, 862 (3d Cir. 1994). Confidential communications between a corporation's employees and in-house counsel are protected by the privilege. Upjohn Co. v. United States, 449 U.S. 383, 394-95 (1981).

The alleged communications from Mr. Schwartz to Mr. Jewitt were the result of Mr. Jewitt seeking legal advice as an employee of IDT from IDT's in-house legal counsel. In fact, Mr. Jewitt admits that he "requested Schwartz to provide [him] with a legal opinion, as a staff member of IDT's In House Legal Bureau, as to the legality of the Teleco Haiti transaction." Jewett Aff. at ¶42. There is no basis in the record for Plaintiff's argument that he was seeking legal advice in a personal role.[1]

---

[1] The New Jersey Rules of Professional Conduct 1.13(a): "A lawyer employed or retained to represent an organization represents the organization as distinct from its directors, officers, employees, members, shareholders or other constituents."

7

Certainly, there is no indication that Plaintiff made it clear to Mr. Schwartz that he was seeking legal advice in his individual, rather than representative capacity. If the communications were made as described, then the attorney-client privilege applies and the privilege belongs to IDT. See United Jersey Bank v. Wolosoff, 483 A.2d 821, 196 N.J. Super. 553, 563 (N.J. Super. 1984).

Plaintiff, in his role as corporate employee, asked for legal advice from the corporation's counsel regarding a proposed transaction. To allow Plaintiff to disclose the legal advice would vitiate the attorney-client privilege in a corporate context. Pursuant to the previously cited cases, this constitutes a serious and clearly defined injury capable of protection. Therefore, Paragraph 54 and the direct quotes in Paragraph 58 of both complaints should be sealed. However, Paragraph 55 should not be sealed because IDT has not demonstrated that the general statements therein fall within the attorney-client privilege.

4.  **Specific Terms Between IDT and Teleco Haiti**

Paragraph 36 describes an agreement between IDT and Teleco Haiti for phone service in Haiti providing that Teleco Haiti would receive a fixed fee per minute. Paragraph 59 of the original complaint describes specific dollar amount savings and specific fees received by an alleged representative of the former president of Haiti. Those dollar amounts were removed in the amended complaint. Nonetheless, the fact that a percentage of the fees were placed into an account allegedly controlled by the former president of Haiti via the Mount Salem corporate accounts remains. IDT claims this information is confidential, proprietary information and it would be harmed if the information is not sealed. However, IDT's argument of harm stems from the disclosure of specific dollar amounts. Once those figures are removed or sealed, the harm alleged is only general in nature. The mere fact that IDT receives a set fee per minute for calls in a particular country, does not

8

constitute a trade secret capable of protection. Similarly, the allegation that fees were placed into a certain account should not be sealed. These paragraphs should not be sealed.

5. **Identities of Specific Contact Individuals at Specific Companies**

IDT claims that disclosure of the names of contact individuals should not be permitted because it treats that information as proprietary and that disclosure would be have a detrimental effect on IDT's business. The only allegation of harm in this regard is the conclusory statement that there would be a detrimental effect upon IDT's business. IDT has failed to make the specific showing of harm required to seal this paragraph of the complaint. However, the inclusion of the e-mail address in the complaint is unnecessary. At the urging of the Court, the parties agreed that the e-mail address will be removed and/or sealed from both complaints.

6. **Identities of Particular Individuals With Authority to Enter Into Contracts**

IDT claims that disclosure of individuals with authority to negotiate contracts may have a detrimental effect upon its business. Again, this allegation of harm is simply too general and speculative to justify sealing the complaint. IDT also argues that competitors will be able to determine that these individuals with contracting authority are "deal-makers" and may then seek to recruit them. IDT's argument, that competitors may be able to lure away valuable employees, fails to meet the exacting standard that allegations of harm be specific and not simply broad possibilities. The information complained of falls far short of trade secret status and thus fails to overcome the presumption of public access.

## CONCLUSION

For the reasons explained herein and as stated on the record, this Court **grants** in part and **denies** in part Defendants' motion to seal portions of the Complaint. Defendants are directed to submit an appropriate Order.


Dated: August 6, 2004                    /s/   Mark Falk
                                                             **MARK FALK**
                                                             **United States Magistrate Judge**