**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
D. MICHAEL JEWETT,                  :
                                    :
    Plaintiff,                      :   Civil Action No. 04-1454 (SRC)
                                    :
    v.                              :
                                    :   **OPINION**
IDT CORPORATION, et al.,            :
                                    :
    Defendants.                     :
_____ :

**CHESLER, U.S.D.J.**

    This matter comes before the Court on three motions: 1) the motion to dismiss the New Jersey Conscientious Employee Protection Act ("CEPA") and New Jersey Law Against Discrimination ("LAD") claims against individual defendants in the Third Amended Complaint for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6), by Defendants IDT Corporation ("IDT"), Howard Jonas, Motti Lichtenstein, Jack Lerer, David Schropfer, Avi Lazar, Robert Schiff, Michael Levine, Jonathan Levy, Alex Schwarz, James Courter, Joyce Mason and John Cate (collectively, "Defendants"); 2) Defendants' motion to dismiss the Supplemental Complaint for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6); and 3) Plaintiff D. Michael Jewett's motion for leave to amend the Third Amended Complaint and the Supplemental Complaint.  For the reasons set forth below, Defendants' motion to dismiss the CEPA and LAD claims will be granted, Defendants' motion to dismiss the Supplemental Complaint will be granted in part and denied in part, and Plaintiff's motion for leave to amend will be denied.

## BACKGROUND

The individual Defendants in this care are: Robert Schiff, Michael Levine, Jonathan Levy, Alex Schwartz, James Courter, Joyce Mason, John Cate, Howard Jonas, Motti Lichtenstein, Jack Lerer, David Schropfer, and Avi Lazar. The motion to dismiss concerns all individual Defendants except for David Schropfer. For convenience, this Court hereinafter refers collectively to the group of all individual Defendants except for David Schropfer as the "non-Schropfer individual Defendants" or "NSID."

In hearing a motion to dismiss for failure to state a claim, the Court accepts all allegations in the Third Amended Complaint and Supplemental Complaint as true. This heavily litigated case arises out of the employment and subsequent termination of Plaintiff D. Michael Jewett by the IDT Corporation. In December of 2005, this Court granted Plaintiff leave to file a Supplemental Complaint. In February of 2006, Defendants moved to dismiss the Supplemental Complaint, which has been pending since that time. In February of 2007, Defendants moved to dismiss certain claims in the Third Amended Complaint. In May of 2007, Plaintiff moved for leave to amend the Third Amended Complaint and Supplemental Complaint.

## ANALYSIS

### I. Legal Standards

#### A. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

On a motion to dismiss for failure to state a claim, pursuant to FED. R. CIV. P. 12(b)(6), the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party. See

Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 (3d Cir. 1994).  A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim.  See In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000).

The general rule for pleading a claim is stated in FED. R. CIV. P. 8(a)(2), and requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-1965 (2007).  In examining a complaint under Rule 12(b)(6), then, the Court must determine whether it contains "enough factual matter (taken as true)" that the "allegations plausibly suggest[]" that the pleader is entitled to relief.  Id. at 1965, 1966.

A pleading's factual allegations are thus evaluated for sufficiency under a "plausibility standard."  Id. at 1968.  This standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" that the pleader is entitled to relief.  Id. at 1965.

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  See Morse v. Lower Merion School District, 132 F.3d 902, 906 n.8 (3d Cir. 1997).  All reasonable inferences, however, must be drawn in the plaintiff's favor.  See Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987).  Moreover, the claimant must set forth sufficient information to outline the elements of his or her claims or to permit inferences to

be drawn that the elements exist. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). "The defendant bears the burden of showing that no claim has been presented." Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

The Supreme Court has characterized dismissal with prejudice as a "harsh remedy." New York v. Hill, 528 U.S. 110, 118 (2000). Dismissal of a count in a complaint with prejudice is appropriate if amendment would be inequitable or futile. "When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile." Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

**II.    Defendants' 12(b)(6) motion to dismiss claims in the Third Amended Complaint**

Plaintiff filed the Third Amended Complaint on January 25, 2006, prior to the Supreme Court's May 21, 2007 decision in Bell Atlantic Corp. v. Twombly, which revised the Rule 12(b)(6) standard for sufficient pleading of facts. Defendants filed the motion to dismiss after the Bell Atlantic decision.

CEPA states: "An employer shall not take any retaliatory action against an employee because the employee does any of the following . . ." N.J. Stat. Ann. § 34:19-3. CEPA defines "employer" as "any individual, partnership, association, corporation or any person or group of persons acting directly or indirectly on behalf of or in the interest of an employer with the employer's consent . . ." N.J. Stat. Ann. § 34:19-2(a). One New Jersey Appellate Division court has construed this language to support the imposition of individual liability. Maw v. Advanced Clinical Communications, Inc., 359 N.J. Super. 420, 439 (N.J. Super. Ct. App. Div. 2003), rev. on other grounds, 179 N.J. 439 (2004).

4

The dispute over dismissal of the CEPA claim turns on the question of whether Plaintiff has pled sufficient facts to support the CEPA claim against the NSID, specifically as to whether any of the NSID took a retaliatory action, within the meaning of the statute.  In opposing the motion to dismiss, significantly, Plaintiff does not contend that the CEPA claim at issue in the Third Amended Complaint can survive a motion to dismiss under the Bell Atlantic standard.  Plaintiff argues, rather, that the allegations in the Third Amended Complaint, as supplemented by newly discovered information, meets the standard.  This is very close to a concession that the claim, as it stands, is invalid under Bell Atlantic.  This Court finds that the factual allegations contained in the Third Amended Complaint do not plausibly suggest that any NSID took a retaliatory action against Plaintiff, acting directly or indirectly on behalf of the employer with the employer's consent.  The allegations thus do not plausibly suggest that Plaintiff is entitled to relief under CEPA against the NSID.  Defendants motion to dismiss the CEPA claim against the NSID will be granted, and the claim will be dismissed without prejudice.

The LAD states that it shall be unlawful discrimination "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so." N.J. Stat. Ann. 10:5-12(e).

Plaintiff argues that Bell Atlantic contains language excepting employment discrimination lawsuits from its pleading requirements.  (Pl.'s Opp. Br. 18.)  Plaintiff has misquoted and misunderstood Bell Atlantic.  The Supreme Court entertained and rejected the argument that its analysis ran counter to the reasoning it applied to a complaint in an employment discrimination lawsuit in Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002).  Bell Atlantic, 127 S. Ct. at 1973-74.  This makes clear that the Bell Atlantic standard fully applies in

employment discrimination cases.

As to individual liability under the LAD, the motion to dismiss turns on the question of whether Plaintiff has pled sufficient facts to support the LAD claim against the NSID, specifically as to whether any of the NSID engaged in unlawful discrimination, or aided and abetted unlawful discrimination, within the meaning of the statute. Again, in opposing the motion to dismiss, significantly, Plaintiff does not contend that the LAD claim at issue in the Third Amended Complaint can survive a motion to dismiss under the Bell Atlantic standard. Plaintiff argues, rather, that the allegations in the Third Amended Complaint, as supplemented by newly discovered information, meets the standard. Again, this is very close to a concession that the claim, as it stands, is invalid under Bell Atlantic. This Court finds that the factual allegations contained in the Third Amended Complaint do not plausibly suggest that any NSID engaged in unlawful discrimination, or aided and abetted unlawful discrimination, against Plaintiff. The allegations thus do not plausibly suggest that Plaintiff is entitled to relief under LAD against the NSID. Defendants motion to dismiss the LAD claim against the NSID will be granted, and the claim will be dismissed without prejudice.

**III.    Plaintiff's motion to amend the Third Amended Complaint**

    A.    <u>Amendment as to termination allegations</u>

Plaintiff seeks leave to amend the Third Amended Complaint to add multiple elements on a variety of grounds.

First, Plaintiff seeks leave to amend the Third Amended Complaint to add "further factual allegations as to who was involved in this termination" and claims that the amendments contain "recently discovered information." (Pl.'s Br. at xv, 4.) These general statements are fine places

6

to start, but Plaintiff's brief never engages in an analysis showing how additional specific factual allegations are needed, nor explains in any detail which allegations arose from what recently discovered information. FED. R. CIV. P. 15(a) states that "leave [to amend] shall be freely given when justice so requires." Plaintiff's brief never clearly explains how justice requires allowing specific amendments, and vague generalizations do not suffice. Rather, Plaintiff offers only this discussion, here quoted in its entirety:

> The discovery record shows that several defendants were involved in plaintiff's termination. Jonathan Levy lobbied defendant David Schropfer to terminate the plaintiff on several occasions. Defendants John Cate and Jack Lerer communicated reasons for plaintiff's termination to Schropfer and held superior or supervisory roles in relation to plaintiff. These are critical facts in determining aiding and abetting liability.

(Pl.'s Br. at xv.)

The first problem is that the factual assertions in this discussion are supported by a single footnote, citing to docket number 182. This docket entry contains 14 documents, totaling hundreds of pages.[1] Furthermore, Plaintiff does not clearly explain the legal significance of these allegations. "Aiding and abetting liability" appears to be a reference to the LAD, since that statute provides for liability for those who aid or abet the doing of any of the acts forbidden under the act. N.J. Stat. Ann. 10:5-12(e). Plaintiff does not explain, however, how these allegations are connected to acts of unlawful discrimination forbidden under the LAD.

Moreover, Plaintiff may have confused retaliatory termination under CEPA and unlawful

---

[1] As the Third Circuit has noted, "[j]udges are not like pigs, hunting for truffles buried in the record." Doeblers' Pa. Hybrids, Inc. v. Doebler, 442 F.3d 812, 820 (3d Cir. 2006) (quoting Albrechtsen v. Board of Regents of University of Wisconsin System, 309 F.3d 433, 436 (7th Cir. 2002)). It is not the Court's job to search the record to find the information was recently discovered.

discrimination under the LAD. Plaintiff does not provide any authority for the proposition that there is individual liability for aiding or abetting a termination under CEPA. Plaintiff suggests that the New Jersey Supreme Court's decision in <u>Tarr v. Ciasulli</u>, 181 N.J. 70, 83 (N.J. 2004) – which construed the words "aid" and "abet" in the LAD – somehow established aiding and abetting liability under CEPA. Plaintiff will need to provide some analysis to persuade that a case which construed two particular words in one statute (LAD) can be used to write those words into another statute (CEPA) that does not contain them.

As to the factual allegations relating to who was involved in the termination, Plaintiff's motion to amend the Third Amended Complaint will be denied without prejudice.

Plaintiff also seeks leave to amend to add "further detail . . . as to plaintiff's objections concerning the FCPA and FCC regulatory violations . . ." (Pl.'s Br. at xiv.) Plaintiff states: "Although this detail requested by the defendants is not required, the plaintiff presents this information, to forestall and put to rest the defendants' complaints." (<u>Id</u>.) Plaintiff has thus conceded that this group of amendments is not legally necessary. The motion for leave to amend will be denied.

   B. <u>Amendment as to the breach of contract claim</u>

Plaintiff seeks leave to amend the Third Amended Complaint to add Count VII for breach of contract. Plaintiff contends that he has recently discovered an employment agreement dated March 17, 2004, which Defendants "did not supply in discovery until forced to do so." (Pl.'s Br. 4.)

Defendants contend that leave to amend should be denied because adding the breach of contract claim is futile, and it is the result of undue delay and bad faith. The undue delay

8

argument has the most obvious merit. The document alleged to be a recently discovered employment agreement appears to be a temporary employment offer letter sent from IDT to Plaintiff on March 26, 2003. (Perniciaro Dec. Ex. B.) The document appears to bear Plaintiff's signature, dated March 27, 2003. (Id.) Plaintiff filed his original Complaint in this action on March 29, 2004. This Complaint related, inter alia, to matters regarding his employment and its termination at IDT. Plaintiff filed the present motion to amend on May 31, 2007.

Under certain circumstances, a motion to amend may be denied on the basis of undue delay:

> The mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay. In fact, delay alone is an insufficient ground to deny leave to amend. However, at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party. Delay may become undue when a movant has had previous opportunities to amend a complaint. See Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993) (three year lapse between filing of complaint and proposed amendment was 'unreasonable' delay where plaintiff had 'numerous opportunities' to amend).

Cureton v. NCAA, 252 F.3d 267, 273 (3d Cir. 2001) (citations omitted). Here, in the three years since the Complaint was originally filed, Plaintiff has had numerous opportunities to amend it. Plaintiff filed an Amended Complaint on May 13, 2004, and a Third Amended Complaint on January 25, 2006.

In this case, as in Lorenz, the facts that form the basis for the breach of contract claim were available to Plaintiff three years ago, at the time he initiated this case. Lorenz, 1 F.3d at 1414. As in Lorenz, the delay in seeking leave to amend is unreasonable. Id.

"[T]he question of undue delay requires that we focus on the movant's reasons for not amending sooner." Cureton, 252 F.3d at 273. The only explanation offered by Plaintiff is that

9

the employment agreement on which the claim is based was only recently discovered. This explanation cannot be true. The document offered by Plaintiff appears to bear his signature with the date of March 27, 2003. Plaintiff must have been aware, or ought to have been aware, of the existence of this document when he filed his Complaint in 2004. Plaintiff has offered no explanation for how a document that bears his signature with a 2003 date should be considered to have been recently discovered. This undue delay in moving for leave to amend also raises questions of whether it has been done in good faith.

Plaintiff, in reply, suggests that bad faith and undue delay, without prejudice to the opposing party, are insufficient as a basis to deny leave to amend. Plaintiff overlooks the guiding principle of Rule 15, that "leave shall be freely given when justice so requires." FED. R. CIV. P. 15(a). In the presence of bad faith or undue delay, justice does not require a separate demonstration of prejudice. The prejudice to Defendants that results from allowing an unduly delayed motion to succeed is obvious.

**IV.    Defendants' motion to dismiss the Supplemental Complaint**

    A.    Count I - Abuse of Process

"Abuse of process" is a state common-law tort which, in short, "requires proof of an improper motive or a perversion of the judicial process." Caggiano v. Fontoura, 354 N.J. Super. 111, 134 (N.J. Super. Ct. App. Div. 2002).

> A successful claim of malicious abuse of process first requires a defendant's 'improper, unwarranted and perverted use of process after it has been issued.' Tedards v. Auty, 232 N.J. Super. 541, 549, 557 A.2d 1030 (App.Div.1989). Defendant must also reveal, after process has been issued, an ulterior purpose in securing it by committing 'further acts' which reveal a motive to coerce or oppress the plaintiff.

Wozniak v. Pennella, 373 N.J. Super. 445, 461 (N.J. Super. Ct. App. Div. 2004). Defendants contend that Plaintiff has failed to adequately plead an improper motive.

Defendants cite the Third Circuit's decision in Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 305 (3d Cir. 2003), as authority for the proposition that the ulterior purpose must have been the primary purpose in using the process; the decision endorses the formulation of the Restatement (Second) of Torts § 682. This case, however, was not decided under New Jersey law, but under that of Pennsylvania. Nonetheless, New Jersey's Appellate Division has also endorsed and relied on the Restatement (Second) of Torts § 682. See Ruberton v. Gabage, 280 N.J. Super. 125, 131 (N.J. Super. Ct. App. Div. 1995) (citing § 682).

Section 682 states the following as the general principle of the tort of abuse of process: "One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process." RESTATEMENT (SECOND) OF TORTS § 682 (1977).

Plaintiff alleges that defendants abused legal process in the course of litigating three motions: 1) a May 3, 2004 motion to seal 33 paragraphs of the Complaint; 2) a June 1, 2004 motion to sanction Plaintiff "for refusing to agree to the sealing of the complaint" (Supp. Compl. ¶ 74); and 3) an April 27, 2005 motion for a protective order.

Plaintiff's claim, in a nutshell, is that Defendants made these three motions for essentially four improper motives: 1) to conceal their misdeeds; 2) to coerce plaintiff into agreeing to their concealment; and 3) to punish and harm plaintiff for not agreeing to their concealment; and 4) to harm plaintiff to the point that he would end this action. The associated litigation is alleged to have harmed Plaintiff by causing him emotional distress and to incur litigation expenses.

Defendants contend, correctly, that Plaintiff has failed to properly allege an illegitimate use of the judicial process. The necessary elements of an abuse of process claim are absent, and it appears that Plaintiff has misunderstood the tort in several basic ways.

First, Plaintiff has relied on an incorrect understanding of the meaning of the word "process" in this context. In <u>Ruberton</u>, the Appellate Division explained that "process," in this context, is used narrowly, and "must be distinguished from the general use, as being 'the whole course of proceedings in a legal action.'" <u>Ruberton</u>, 280 N.J. Super. at 131. Thus, in this context, "process" does not apply broadly to all proceedings in a legal action. Rather, it is limited to certain products of litigation that a court issues, such as a "summons, mandate, or writ used by a court to compel the appearance of the defendant in a legal action or compliance with its orders." <u>Id.</u> (quoting Webster's Ninth New Collegiate Dictionary 937 (1986)).

Viewing Plaintiff's claim for abuse of process in the light of this narrow definition of "process," it is clear that Plaintiff has not stated a valid claim. Given the restriction of the use of "process" to things issued by a court to compel a defendant, as applied to these allegations, only the order or orders issued constitute process. The Supplemental Complaint alleges only that Defendants moved for, and the Court issued, an order sealing the Complaint. The sealing order is the only process that Defendants could have abused.

To state a valid claim, Plaintiff must next allege a subsequent misuse of the process that was obtained. The Restatement explains:

> The gravamen of the misconduct for which the liability stated in this Section is imposed is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish. . . . The subsequent misuse of the process, though properly obtained,

12

> constitutes the misconduct for which the liability is imposed under the rule stated in this Section.

RESTATEMENT (SECOND) OF TORTS § 682 comment a.

Paragraph 144 of the Supplemental Complaint lists 18 such "further acts." Plaintiff has misunderstood the standard, however. Plaintiff offers these acts as demonstrations of improper intent, when they must show misuse of the process after issuance. Crucially, Plaintiff does not allege that Defendants subsequently misused the sealing order. Rather, Plaintiff alleges that litigation over the sealing order continued, and that Plaintiff ultimately prevailed to some degree. Plaintiff in no way alleges that Defendants perpetrated a "perverted" misuse of the sealing order subsequent to its issuance.

The majority of what Plaintiff has alleged in this claim is bad faith use of litigation to harm and conceal misdeeds, as well as other kinds of misconduct during litigation. As discussed, Plaintiff misapprehends the narrow meaning of "process" in New Jersey's law of the tort of abuse of process, and thus such allegations fail to state a valid claim for relief under that cause of action.

Amendment of this claim is futile. Plaintiff has already presented an exhaustive set of allegations of Defendants' misconduct during the litigation, and they show that Plaintiff has misunderstood the cause of action for abuse of process. This is not a defect that can be cured by repleading. Count I of the Supplemental Complaint for abuse of process will be dismissed with prejudice.

B.   Count II - Defamation

The Supplemental Complaint alleges that Plaintiff has been defamed on three occasions:

1) on October 8, 2004, an IDT spokesperson made these statements:

> "IDT 'takes any kind of complaint seriously' but that this one is a 'baseless claim by a former disgruntled employee.'
>
> there has already been a 'complete review by the internal audit committee and by outside counsel.'
>
> IDT 'intend[s] to file a counter-claim and a motion to dismiss' and that it has 'filed sanctions against the plaintiff's counsel.'"

(Supp. Compl. ¶ 152);

2) on October 14, 2004, IDT filed a 10-K statement which disclosed Plaintiff's lawsuit and contained these statements:

> "We have also sought sanctions against Jewett's attorney. . . Neither the Company's nor the Audit Committee's investigation has found any evidence that we made any such improper payments to foreign officials."

(Supp. Compl. ¶ 153);

3) on October 1, 2005, James Coulter made this statement in a newspaper article: "The plaintiff is disgruntled and has no evidence."  (Supp. Compl. ¶ 154).

Under New Jersey law, a claim for defamation has four elements:

> Our courts have defined defamation consistently with section 559 of the Restatement (Second) of Torts (1977).  The Restatement provides that in addition to damages, the elements of a defamation claim are: (1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher.

DeAngelis v. Hill, 180 N.J. 1, 12-13 (N.J. 2004) (citations omitted).  The Court determines, as a matter of law, whether a statement is "susceptible of a defamatory meaning." Id. at 14.  "In making this determination, courts must consider three factors: (1) the content, (2) the

verifiability, and (3) the context of the challenged statement." Id. "As a general rule, a statement is defamatory if it is false, communicated to a third person, and tends to lower the subject's reputation in the estimation of the community or to deter third persons from associating with him." Lynch v. N.J. Educ. Ass'n, 161 N.J. 152, 164-165 (N.J. 1999).

Defendants contend that the defamation claim is not sustainable as a matter of law. This is clearly true for the allegations regarding statements not about Plaintiff. The statements about the past and future actions of IDT and its counsel are not even statements about Plaintiff. The content of these statements renders them void of defamatory meaning in regard to Plaintiff.

This leaves two statements to consider, both of them characterizing Plaintiff as "disgruntled," one calling Plaintiff's claim "baseless" and the other saying he "has no evidence." "Evaluation of content involves consideration not merely of a statement's literal meaning, but also of the fair and natural meaning that reasonable people of ordinary intelligence would give to it." Lynch, 161 N.J. at 167. Neither the literal meaning of "disgruntled" (dissatisfied) nor the meaning that reasonable people of ordinary intelligence would give to it are defamatory: characterization as having been "disgruntled" does not lower a person's reputation in the estimation of the community.

As to the statements that Plaintiff's claim is baseless and that he has no evidence, the context is crucial: these statements occurred in the context of a litigant characterizing the opposing party's case. The reasonable listener understands that these statements express the speaker's opinion that the opponent's case has no merit. Thus, the context of the statements sets their verifiability, the second consideration: the context reveals that they are statements of opinion. "[O]pinion statements do not trigger liability unless they imply false underlying

objective facts." Lynch, 161 N.J. at 167. These statements do not imply false underlying objective facts.

Rather, these statements are examples of the absolutely routine, commonplace public statements made by litigants about their opponents and their opponents' cases. Characterizing such statements as actionable defamation would create serious problems. First, it would open the floodgates to a tidal wave of defamation lawsuits. Second, it would unreasonably restrict the ability of litigants to publicly deny the allegations made by their opponents. "The law of defamation exists to achieve the proper balance between protecting reputation and protecting free speech." DeAngelis, 180 N.J. at 12. These statements, made by litigants in the context of litigation, do not injure reputation, and the balance here tips toward protecting free speech.

This Court finds that Plaintiff has failed to state a valid claim for defamation. Amendment is futile: the relevant factual allegations have been pled, and no amendment could allow this claim to withstand a motion to dismiss. Count II of the Supplemental Complaint, for defamation, will be dismissed with prejudice.

      C.      Count III - Intentional infliction of emotional distress

Plaintiff alleges that Defendants intentionally inflicted severe emotional distress upon him both by the statements alleged in the defamation claim and by IDT's conduct surrounding his termination. As to the part of the claim relating to IDT's conduct surrounding the termination, this fails to state a valid claim because this Court limited the Supplemental Complaint to acts that occurred after the filing of the Amended Complaint (May 13, 2004), whereas the termination and report to the New Jersey Department of Labor are alleged to have occurred in November and December of 2003. (Order of December 29, 2005 at 7-8.) This leaves Count III relying on

16

allegations concerning emotional distress produced by the alleged defamatory statements already discussed.

"Generally speaking, to establish a claim for intentional infliction of emotional distress, the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." Buckley v. Trenton Sav. Fund Soc., 111 N.J. 355, 366 (N.J. 1988).

Defendants make two arguments in support of dismissing this claim. First, Defendants contend that Plaintiff has not adequately pled emotional distress of sufficient severity. This is unpersuasive: Plaintiff alleged, among other things, that he "has experienced constant anxiety." (Supp. Compl. ¶ 193.) This is sufficient to support a claim of severe emotional distress. Second, Defendants contend that emotional distress from litigation is not compensable as a matter of law. This argument fails because it does misconstrues Plaintiff's claim. Plaintiff claims that particular statements caused severe emotional distress, not that the stress of litigation was the cause. This Court declines to construe the alleged defamatory statements as litigation itself.

Although this Court has serious questions about whether this claim can succeed, Defendants have not argued that the alleged statements cannot constitute outrageous conduct as a matter of law, and so this Court cannot, at this point, dismiss them on such a ground. See RESTATEMENT (SECOND) OF TORTS § 46 comment j. Defendants' motion to dismiss Count III of the Supplemental Complaint, for intentional infliction of emotional distress, will be denied.

**V.      Plaintiff's motion to amend the Supplemental Complaint**

Plaintiff seeks leave to amend the Supplemental Complaint to add allegations as to Defendants' more recent conduct. This motion will be denied. Insofar as such allegations

support Counts I and II, since those claims have been dismissed with prejudice, the motion is moot.  Insofar as such allegations relate to Count III, for intentional infliction of emotional distress, Plaintiff contends only that these allegations "support" Count III.  (Pl.'s Br. 6.)  Plaintiff has not explained how, pursuant to FED. R. CIV. P. 15(a), justice requires adding them.  A complaint need not allege every fact, and motions to make unnecessary amendments only interfere with the Court's efficiency.  The motion for leave to amend will be denied.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss Count II and Count III of the Third Amended Complaint, pursuant to FED. R. CIV. P. 12(b)(6), is **GRANTED**, only as to Defendants Howard Jonas, Motti Lichtenstein, Jack Lerer, Avi Lazar, Robert Schiff, Michael Levine, Jonathan Levy, Alex Schwarz, James Courter, Joyce Mason and John Cate; these claims are **DISMISSED** without prejudice.  Defendants' motion to dismiss the claims for Abuse of Process and Defamation in the Supplemental Complaint are **GRANTED**; these claims are **DISMISSED** with prejudice.  Defendants' motion to dismiss the claim for Intentional Infliction of Emotional Distress in the Supplemental Complaint is **DENIED**.  Plaintiff's motion for leave to amend the Third Amended Complaint and the Supplemental Complaint is **DENIED**.

      s/ Stanley R. Chesler
    Stanley R. Chesler, U.S.D.J.

Dated: September 11, 2007