NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| D. MICHAEL JEWETT, | : | |
| | : | Civil Action No. 04-1454 (SRC) |
| Plaintiff, | : | |
| | : | **OPINION** |
| v. | : | |
| | : | |
| IDT CORPORATION, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

**CHESLER**, District Judge

This matter comes before the Court upon the motion for summary judgment filed by Defendant IDT Corporation and David Schropfer (docket item # 519).  Plaintiff  has opposed this motion (docket item # 526).  The Court has considered the papers submitted by the parties.  It rules based on those submissions pursuant to Federal Rule of Civil Procedure 78.  For the reasons discussed below, Defendants' motion for summary judgment (docket item # 519) will be granted in part and denied in part.  The motion for summary judgment regarding the Conscientious Employee Protection Act ("CEPA") claim will be denied.  The motion for summary judgment regarding the New Jersey Law Against Discrimination  ("NJLAD") and common-law defamation claims will be granted.

## I.   BACKGROUND

Defendant IDT Corporation ("IDT") is a telecommunications company which provides domestic and international voice and calling card services.  Plaintiff was hired by IDT on April 15, 2003 as Regional Director of the Caribbean.  Defendant David Schropher ("Schropher"), Plaintiff's supervisor, was the person who made the decision to terminate Plaintiff.  IDT and Schropher assert that it terminated Plaintiff due to poor performance.  Plaintiff, however, asserts that he was terminated because he expressed concerns over the legality of IDT's proposed Teleco Haiti Contract.  The Haiti Contract, which involved payments to the personal bank of the President of Haiti, allegedly violated the Foreign Corrupt Practices Act ("FCPA"), along with various mail and wire fraud statutes.  Plaintiff also alleges he may have been terminated, in violation of the New Jersey Law Against Discrimination ("NJLAD"), for failing to donate to various Jewish charitable organizations.

The remaining claims asserted against IDT and David Schropfer are: 1) retaliatory discharge in violation of Sections 3a and 3c of the Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1, *et. seq.*, 2) retaliatory discharge in violation of the New Jersey Law Against Discrimination (the "NJLAD"), N.J.S.A. 10:5-1, *et. seq.*, and 3) common law defamation.  The defamation claim is based upon alleged statements by unidentified IDT employees to the New Jersey Department of Labor ("NJDOL") in regards to Plaintiff's unemployment benefits.  The NJDOL report states that Plaintiff was fired for "poor work performance."

## II.    DISCUSSION

### A.    Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000).  In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party.  See Boyle v. Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998).  The moving party bears the burden of establishing that no genuine issue of material fact remains.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

 Pursuant to Federal Rule of Civil Procedure 56(e), the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Celotex, 477 U.S. at 324; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) ("to raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant," but rather "must exceed the 'mere scintilla' threshold"), cert. denied, 507 U.S. 912 (1993)).

### B.   Discussion

**Conscientious Employee Protection Act N.J.S.A. 34:19-3c**

The Conscientious Employee Protection Act ("CEPA") is New Jersey's "whistle-blower" statute.  N.J.S.A. 34:19-1 et seq.  It protects employees from retaliation by an employer for reporting, threatening to disclose or refusing to participate in the employer's unlawful activity.  N.J.S.A. 34:19-3; D'Annunzio v. Prudential Ins. Co. of Am., 192 N.J. 110, 120  (2007) ("CEPA prohibits an employer from taking adverse employment action against any 'employee' who exposes an employer's criminal, fraudulent, or corrupt activities.").  To further its remedial goals of protecting employees and deterring employers from engaging in unlawful or corrupt conduct, CEPA created a private right of action for the aggrieved employee against the employer. N.J.S.A. 34:19-5; D'Annunzio, 192 N.J. at 120.  The elements of a CEPA claim are: (1) the aggrieved employee reasonably believed that the employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3c; (3) an adverse employment action was taken against the plaintiff employee; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.  Dzwonar v. McDevitt, 177 N.J. 451, 462 (2007).  A CEPA plaintiff need not demonstrate "that the activity complained of ... [constituted] an actual violation of a law or regulation," but simply that he or she "'reasonably believes' that to be the case."  Id. (quoting Estate of Roach v. TRW, Inc., 164 N.J. 598, 613 (2000)).

In relevant part, the statute provides:

An employer shall not take any retaliatory action against an employee

4

because the employee does any of the following . . .

c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

(1) is in violation of a law, or a rule or regulation promulgated pursuant to law ...;
(2) is fraudulent or criminal; or
(3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

N.J.S.A. 34:19-3c[1]

There is a significant factual dispute concerning whether Plaintiff was terminated for legitimate performance reasons, or if Plaintiff was terminated in retaliation for whistle-blowing activity.  The record pertaining to performance demonstrates a genuine issue of material fact. There are various documents which do suggest performance issues.  (See, e.g., E-mail from David Schropfer to Chuck Fredda, dated 11/07/2003, indicating "he just doesn't get the job done."; E-mail from David Schropfer to Chuck Fredda, Jon Levy and Joe Rothwax, dated 11/11/2003, recapping the reasons for terminating  Plaintiff; E-mail from Jack Lerer to Plaintiff, dated 6/1/2003, informing Plaintiff that he was sending information to the wrong people;

---

[1]As an initial matter, Defendants argue that all other causes of action are waived under the CEPA waiver provision, which states, in relevant part, that "the institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law."  N.J.S.A. 34:19-8.  This waiver provision bars "causes of action that require a finding of retaliatory conduct that is actionable under CEPA."  Young v. Schering Corp., 141 N.J. 16, 29 (1995).   Here, the NJLAD claim is based solely on the claim that Plaintiff was terminated for his failure to contribute to Jewish charitable organizations.  (Opp. at 11.)  This alleged conduct is in no way related to any whistle-blowing activity, and would not be actionable under CEPA.  Relatedly, although the common-law defamation claim is somewhat related to the alleged whistle-blowing activity, it does not "require a finding of retaliatory conduct that is actionable under CEPA."  Consequently, the CEPA waiver provision will not bar the NJLAD and defamation claims.

Plaintiff admitted that various deals of his did not close and that Mr. Lerer was "upset" with his performance on a deal (Ex. A, Pl. Tr., 397-399; 997:20 - 998:25)).  There are, however, various documents which tend to suggest that Plaintiff's performance was more than sufficient. (See, e.g., Plaintiff's receipt of numerous congratulatory e-mails (Counter-Statement of Undisputed Material Facts ("CSOUMF") at 256-264); Plaintiff was continually given more responsibility on various accounts (CSOUMF at 204-209); E-mail from Schropfer to Plaintiff, dated July 11, 2003 indicating that "you certainly have earned [Jack's] trust!" (Ex Q); Plaintiff did complete the Batelco deal and TSTT deal (CSOUMF at 214-226;246-255); Mr. Lerer referenced his earlier criticism of Plaintiff's work, but then indicated Plaintiff's work on the Haiti Contract was "excellent."  (Lerer Deposition, Exhibit 20); Schropfer credits Plaintiff with achieving 107% of his NAV goal (Schropfer Deposition, Exhibit 22)).

        The record presents a genuine issue of material fact as to Plaintiff's performance.  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) ("to raise a genuine issue of material fact . . . the [non-moving party] need not match, item for item, each piece of evidence proffered by the movant," but rather "must exceed the 'mere scintilla' threshold"), cert. denied, 507 U.S. 912 (1993)).  Plaintiff has presented enough of a factual dispute to withstand summary judgment on the issue of performance.

        Furthermore, to invoke a cause of action under CEPA, Plaintiff must sufficiently object to any activity, policy or practice which he reasonably believes: "(1) is in violation of a law, or a rule or regulation promulgated pursuant to law ... or (2) is fraudulent or criminal." N.J.S.A. 34:19-3c.  "The object of CEPA is . . . to prevent retaliation against those employees who object to employer conduct that they reasonably believe to be unlawful." Mehlman v. Mobil Oil Corp.,

6

153 N.J. 163, 193-94 (1998).   In determining reasonableness, the Court's first inquiry is to determine if there is a substantial nexus between the complained of conduct and the violated law identified by the Plaintiff.  Dzwonar v. McDevitt, 177 N.J. 451, 464 (2003); Lau v. Plymouth Environmental, Inc, 2007 WL 4563510, at *6 (App. Div.  Dec. 31, 2007) (a CEPA plaintiff must identify a law or policy which he reasonably believes is, or will be imminently, violated). Here, that substantial nexus does exist.  The record demonstrates that Plaintiff's belief that the Haiti Contract was in violation of a law (FCPA) is reasonable.  The FCPA prohibits the willful use of the mails or any means of instrumentality of interstate commerce, to offer payment, make payment, or promise to pay, bribes to foreign decisions.  15 U.S.C. Section 78dd-1, *et seq*.  The record demonstrates that payments were being made directly to Mont Salem Bank, the personal bank of the President of the Republic of Haiti.  (CSOUMF 48-52.)  Plaintiff also objected to IDT's practice of not filing its agreements with the FCC.  (CSOUMF 132-134.)  Subsequently, the FCC, in a Notice of Apparent Liability, found that IDT failed to publicly file the Teleco Haiti deal as required under IDT's license.  (CSOUMF 344.)  Furthermore, Plaintiff was instructed by Plaintiff to not include Haiti in any Caribbean projections due to Haiti's corrupt government.  While such practices may not be per se violations of the law, such practices would render Plaintiff's belief reasonable.

The next inquiry is whether Plaintiff sufficiently objected to the activity.  Defendant's rely on Blackburn v. United Parcel Service, 3 F. Supp. 2d. 504 (D.N.J. 1998) for the proposition that Plaintiff's general protestations are insufficient to meet the objection requirement under

CEPA.[2]  In Blackburn, the Court held that:

> plaintiff merely conveyed his *concerns*, through various memos and
> conversations, that a law might at some point in the future be violated if certain
> precautions were not taken or changes not made in the pricing system then being
> developed. He also questioned, disagreed with, and expressed his level of
> discomfort about his employer's practices. Plaintiff never conveyed a reasonable
> belief, however, that the activities about which he complained *were unlawful*
> such that "a reasonable lay person" *could* "conclude that illegal activity was
> going on."
> Id. at 516.

Relatedly, in Gimello, the Court held that a food handler's comments that  "[the meat is]

rewrapped product. It's green. It shouldn't be out in the case" and that "the meat case isn't

looking good. They're rewrapping product," did not rise to the level of "whistle-blowing"

protected by CEPA.  Gimello v. Costco Wholesale Corp., 2008 N.J. Super LEXIS 2066, *11-12

(App. Div. Dec. 8, 2008).  Conversely, a maintenance worker's statements, such as, wanting to

discuss "health hazard conditions and maintenance lack of service in the building" was held to be

sufficient.  Hernandez v. Montville Tp. Bd. Of Educ., 354 N.J. Super 467 (2004).

Here, the factual record demonstrates, albeit barely, that Plaintiff voiced sufficient

objections to withstand a motion for summary judgment.   According to Plaintiff's testimony, he

"asked Jack [Lerer] if [the deal] was legal," "raised concerns to Schropfer about the legality of

the deal since payments went to MSM and not Haiti," asked in-house attorney Alex Schwarz

"what would happen if the FCC found out about this and the legality of what we are doing," and

that he "had gone to legal, [] had spoken to [his] boss, [] had spoken to John Cate."  (Plaintiff's

---

[2]It also is argued that Plaintiff failed to use the formal complaint process and continued to
work on the Haiti deal despite his alleged protestations.  The Defendants have failed to put forth,
and the Court has failed to find, any support for the proposition that such conduct bars Plaintiff
from meeting the requirements of a CEPA retaliation claim.

testimony 3-31-09, p 556-58, 575-78, 603.)   Plaintiff's own testimony is also corroborated by the testimony of others.  Defendant Schropfer conceded that "someone who may be Plaintiff" questioned the legality of the unusual payments to Mont Salem. (CSOUMF 331)  Diane Clark, the Managing Attorney for IDT testified that it was reported to her that "someone in the Telecom Group" was claiming that the payments were bribes intended for the President of Haiti and that she reported these concerns to upper-management.[3]  Id. at 48-52.  Giving the non-movant all reasonable inferences, as the Court must do, Plaintiff has withstood summary judgment on the CEPA claim, as there is a genuine issue of material fact concerning whether or not Plaintiff "conveyed a reasonable belief, [], that the activities about which he complained *were unlawful* such that "a reasonable lay person" *could* "conclude that illegal activity was going on." Blackburn, 3 F. Supp. 2d. at 516.  The motion for summary judgment regarding the CEPA claim is denied.

### The New Jersey Law Against Discrimination  ("NJLAD"), N.J.S.A. 10:5-1, et seq.

The  New  Jersey  Law  Against  Discrimination  makes  it  unlawful  to  subject  people  to differential treatment based on, for example, race, creed, color, national origin, nationality, ancestry, age, sex, familial status, marital status, or domestic partnership status.  To set forth an NJLAD retaliation claim, Plaintiff must establish "(1) he engaged in a protected activity, (2) the activity was

---

[3] Defendants assert that any alleged objections fail for the additional reason that such objections were not made to a "supervisor."  The Court disagrees.  Under CEPA, a supervisor is any person "who has the authority to direct and control the work performance of the affected employee [or] who has authority to take corrective action regarding the violation of the law. . ." N.J.S.A. 34:19-2(d).  As discussed supra, Plaintiff allegedly raised concerns to his direct supervisor, upper-management, an in-house junior attorney, and the managing attorney for IDT. Each of these individuals could be considered a supervisor under CEPA.

known to defendants, (3) Plaintiff suffered an adverse employment action, and (4) there existed a causal link between the protected activity and the adverse employment action." <u>Young v. Hobart West Group</u>, 385 N.J. Super 448, 465 (App. Div. 2005).   Plaintiff testified that his failure to contribute to Jewish charities "may have contributed to [his] termination."  (Pl. Tr. 173 -74) As an initial matter, it is not entirely clear wether the failure to contribute to a religious charity would be considered protected activity under the NJLAD.  This is of no moment, however, as there has been no demonstration of "a causal link between the protected activity and the adverse employment action."  Plaintiff has failed to refute Defendant Schropfer's unqualified statement that Plaintiff's failure to contribute played no role in his termination.  (Schropfer Cert. at 7) Plaintiff's conclusory testimony that his failure to donate "may have contributed" to his termination, fails to demonstrate the necessary causal link.  The NJLAD claim will be dismissed.

**<u>Common Law Defamation</u>**

Subsequent to Plaintiff's termination, IDT filed claims of "poor work performance" at the New Jersey Department of Labor.  (CSOUMF 156-163.)  Although Plaintiff has no personal knowledge of what exactly was communicated to the NJDOL, Plaintiff can rightfully assume that IDT informed the NJDOL that he engaged in "poor work performance." (CSOUMF 156-163.) Plaintiff contends such statements are defamatory/libelous per se since they regard his ability to perform his trade or business. <u>Patel v. Soriano</u>, 369 N.J. Super. 192 (A.D. 2004)(statements incompatible with plaintiff's business); <u>Sokolay v. Edlin</u>, 65 N.J. Super. 112 (A.D. 1958).  The Court agrees that the alleged statements may fulfill the elements of defamation/libel per se as such statements have the potential to adversely affect plaintiff in his lawful business or trade. Under such a cause of action, a plaintiff need not prove "special damages," i.e. monetary or out-

10

of-pocket loss.  Instead, a plaintiff need only prove "general damages," i.e. "proof that one's

reputation was actually affected by the slander, or that she suffered personal humiliation, or

both." Franklin Prescriptions, Inc. v. New York Times Co., 424 F.3d 336, 343 (3d Cir. 2005)

(internal citations omitted).  Here, Plaintiff has failed to demonstrate that his income, or

reputation, was actually affected by the statements.

Plaintiff alleges that he has suffered damages to both his livelihood and reputation.  First,

Plaintiff asserts that IDT's Non-Competition Agreement, the existence of the current litigation

and his status as a whistle-blower have prevented him from obtaining employment.  While this

may be true, there is no indication that the *alleged defamatory statements* have adversely affected

Plaintiff in anyway.  There is nothing to suggest that the NJDOL report of Plaintiff's poor work

performance is in anyway causally related to Plaintiff's alleged damages.  In short, Plaintiff has

demonstrated neither special, nor general, damages.  For this reason, the common-law

defamation claim is dismissed.

## Conclusion

For the foregoing reasons, Defendants' motion for summary judgment (docket item #

519) will be granted in part and denied in part.  The motion for summary judgment regarding the

Conscientious Employee Protection Act ("CEPA") claim will be denied.  The motion for

summary judgment regarding the New Jersey Law Against Discrimination  ("NJLAD") and

common-law defamation claims will be granted.  An appropriate form of order will be filed

together with this Opinion.

11

    s/ Stanley R. Chesler

STANLEY R. CHESLER
United States District Judge

DATED: June 7, 2010